UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Lori L. Bergeron,
 Claimant

 v.                                   Civil No. 09-cv-070-SM
                                      Opinion No. 2009 DNH 174
Michael Astrue, Commissioner
of Social Security,
 Respondent


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Lori Bergeron, moves to reverse the Commissioner's decision denying her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons given, the matter is remanded to the Administrative Law Judge ("ALJ") for further proceedings consistent with this opinion.


**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

>    remanding the cause for a rehearing.  The findings of
>    the Commissioner of Social Security as to any fact, if
>    supported by substantial evidence, shall be conclusive
>    . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.' "  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 10).  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Prior to her alleged onset date, Bergeron was treated by Dr. John Ford for chronic pain.  On June 1, 2006, the alleged onset date, Bergeron suffered multiple injuries in a motor vehicle accident.  Among her injuries was an open compound fracture of the right tibia and fibula, which required extensive treatment including a skin graft and a bone graft.  While she was being treated for her leg injury, and thereafter, Bergeron continued to

see her primary care physician, Dr. Ford, who treated her for a variety of conditions including bipolar affective disorder, depression with anxiety, and pain in her right leg. On March 20, 2008, Dr. Ford submitted a form titled "Determination of Incapacity Status" to the New Hampshire Department of Heath and Human Services in support of Bergeron's application for medical assistance. That form described "incapacity" in the following way:

> To qualify [for medical assistance based on incapacity], the applicant must be physically or mentally incapacitated to the extent that his/her ability to support or care for his/her children is substantially reduced, and the incapacity is expected to last for a period of at least 30 days from the date of application for assistance, or lasted at least 30 days in the 90 day period prior to the application date.

(Administrative Transcript (hereinafter "Tr."), at 88.) On the form, Dr. Ford reported that Bergeron became incapacitated on August 3, 2006, that her incapacity had not yet ended, and that its termination could not be determined at that time. (Id.) He described her incapacity as "severe right lower extrem[ity] injury [and] bipolar disorder." (Id.)

On July 28, 2006, Bergeron applied for both DIB and SSI. She described her disabling conditions as "[b]one infection in leg, broken bones from accident, panic disorder, bipolar." (Tr.

3

at 94.) After a hearing at which Bergeron was not represented by counsel, the ALJ issued a decision in which she determined that claimant had two severe impairments, "nonunion of a tibia fracture and a bipolar disorder" (id. at 13), but was not disabled under the relevant sections of the Social Security Act. (id. at 19.) In support of her determination that Bergeron retained "the residual functional capacity to perform the full range of light work . . . with the exception that she needs simple, routine tasks and a standard work schedule" (id. at 17), the ALJ stated that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p" (id.). In support of her determination that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" (id. at 18), the ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("the Grid"). The ALJ did not, however, obtain the testimony of a vocational expert.

## Discussion

Bergeron argues that the Commissioner's decision should be reversed, and the case remanded, because the ALJ committed legal error by failing to obtain vocational expert evidence and by failing to consider the opinion of a treating physician. The Commissioner disagrees.

A. Relevant Law

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The only question in this case is whether the ALJ correctly determined that Bergeron was not under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits). Moreover,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work

> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> [she] lives, or whether a specific job vacancy exists
> for [her], or whether he [she] would be hired if [she]
> applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 U.S.C. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform past
> relevant work, then the application is denied; 5) if
> the [claimant], given his or her residual functional
> capacity, education, work experience, and age, is
> unable to do any other work, the application is
> granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). If the [claimant's] limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). "The Grid," as it is known, consists of a matrix of the [claimant's] exertional capacity, age, education, and work experience. If the facts of the [claimant's] situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However, if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his [or her] ability to perform jobs he [or she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).

B. Lack of a Vocational Expert

Bergeron first argues that because the ALJ determined that she was able to perform less than the full range of light work, i.e., only simple routine tasks with a standard work schedule, it was necessary for the ALJ to obtain the testimony of a vocational expert, rather than relying on the Grid alone.  Claimant is mistaken.

The ALJ's determination that Bergeron was capable of performing only simple routine tasks and needed a standard work schedule did not amount to recognition of non-exertional limitations that diminished her capacity to perform light work as reflected in the Grid.  Rather, the ALJ simply indicated that claimant was limited to unskilled work.  See Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *4 (S.S.R.) (describing "[t]he basic mental demands of competitive, remunerative, unskilled work").  Because the decisions dictated by the Grid are based on "the numbers of unskilled jobs that exist throughout the national economy at the various functional levels," 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b), the ALJ's findings in this case did not " 'significantly affect [Bergeron's] ability to perform the full range of jobs' at the appropriate strength level."  Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1992) (quoting Lugo v. Sec'y of Health & Human Servs., 794 F.2d 14, 17

(1st Cir. 1986); citing Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989)). Accordingly, the ALJ had no obligation to consult a vocational expert, see Heggarty, 947 F.2d at 995-96, and committed no error by not doing so.

### C. Failure to Mention Dr. Ford's Opinion

Bergeron also argues that the ALJ erred by failing to consider Dr. Ford's determination that she was incapacitated as of August 3, 2006, due to her leg injury and bipolar disorder. Respondent counters that Dr. Ford's opinion was a statement on an issue reserved to the Commissioner and, as such, was entitled to no weight in the ALJ's decision, and could be disregarded by the ALJ without comment. The Commissioner is mistaken.

In her decision, the ALJ stated that she considered the opinion evidence presented to her in accordance with, among other things, SSR 96-5p, 1996 WL 374183 (S.S.A.). (Tr. at 17.) SSR 96-5p describes the Social Security Administration's policies for dealing with medical source opinions on issues reserved to the Commissioner, such as Dr. Ford's opinion that Bergeron was incapacitated. According to SSR 96-5p, "adjudicators must always carefully consider medical source opinions about any issue, including opinions on issues that are reserved to the Commissioner." 1996 WL 374183, at *2. After explaining that

"treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance, the Ruling continues, explaining:

> [O]pinions from any medical source on issues reserved to the Commissioner <u>must never be ignored</u>. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

<u>Id.</u> at *3 (emphasis added). Finally, the Ruling directs that "[t]reating source opinions on issues reserved to the Commissioner will never be given controlling weight [but] the notice of the determination or decision <u>must explain the consideration given to the treating source's opinion(s)</u>." <u>Id.</u> at *6 (emphasis added). Thus, the Commissioner is incorrect, as a matter of law, in arguing that "SSR 96-5p does not direct an ALJ to mention such an opinion in her decision, but only to consider the opinion."[1]  (Resp't's Memo. of Law (document no. 9-2), at 10.)

---

[1] The Commissioner's reliance on <u>Zyla v. Astrue</u>, Civil No. 08-cv-86-SM, 2009 WL 948656 (D.N.H. April 6, 2009), for the proposition that an ALJ is not obligated to mention a treating source's opinion on an issue reserved to the Commissioner is misplaced because in <u>Zyla</u>, the court did not have the occasion to interpret or apply SSR 96-5p.

10

Here, the ALJ stated that she considered the opinion evidence before her in accordance with SSR 96-5p, but Dr. Ford's opinion is not mentioned at all in her decision.  Because the ALJ was obligated to explain the consideration she gave Dr. Ford's opinion, but did not do so, this case must be remanded.[2]  See, e.g., Dietz v. Astrue, Civil Action No. 08-30123-KPN, 2009 WL 1532348, at *7 (D. Mass. May 29, 2009) (remanding when ALJ failed to give good reasons for discounting treating source opinion regarding claimant's residual functional capacity, an issue reserved to the Commissioner); Ambrose v. Astrue, No. 07-84-B-W, 2008 WL 648957, at *5-*6 (D. Me. March 5, 2008) (remanding when ALJ failed to explain rejection of treating source's opinion regarding materiality of claimant's drug and alcohol abuse, an issue reserved to the Commissioner); Cranmer v. Astrue, No. 07-99-P-S, 2008 WL 648964, at *4 (D. Me. March 5, 2008) (remanding "in order for the ALJ to consider both of the RFC opinions provided by the two treating physicians"); Spinale v. Barnhart,

---

[2] Under some circumstances, failure to explain the consideration given to a treating source's opinion on an issue reserved to the Commissioner can be a harmless error that does not require remand, but this is not such a case.  For example, in Fletcher v. Astrue, Civil No. 08-150-B-W, 2009 WL 214579 (D. Me. Jan. 28, 2009), the court ruled that the ALJ committed harmless error by failing to explain the consideration given to a treating physician's opinion, but the doctor in that case saw the claimint only twice, unlike Dr. Ford, who saw Bergeron extensively over the course of several years.  In other words, Dr. Ford's treating relationship with Bergeron was not sufficiently negligible to render the ALJ's failure to explain the consideration she gave to Dr. Ford's opinion harmless error.

No. Civ. 03-069-B, 2004 WL 45518, at *5-*6 (D.N.H. Jan. 5, 2004) (remanding when ALJ failed to explain implicit rejection of treating physician's opinion that claimant was disabled).  As Magistrate Judge Cohen explained in Ambrose: "It is not the task of the court (or, for that matter, counsel for the Commissioner) to articulate for the first time at the appeals stage 'good reasons' for rejecting a treating source's opinion."  2008 WL 648957, at *5 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); Hageman v. Astrue, No. 07-1002-WEB, 2007 WL 4239466, at *8 (D. Kan. Oct. 10, 2007)).  On remand, the ALJ must explain the consideration she gave to Dr. Ford's March 20, 2008, opinion that Bergeron had been incapacitated since August 3, 2006.

## Conclusion

For the reasons given, claimant's motion to remand for a new administrative determination (document no. 8) is granted, and the Commissioner's motion to affirm his decision (document no. 9) is denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings.  The Clerk of the Court shall enter judgement in accordance with this order and close the case.

**SO ORDERED.**

                                _____
                                Steven J. McAuliffe
                                Chief Judge

November 10, 2009

cc:  D. Lance Tillinghast, Esq.
     T. David Plourde, Esq.